# Holt *v.* Kelley, Appellant.. Loraine *v.* Kelley, Appellant.

*Mines and mining—Coal lease—Minimum rental—Thickness of vein.*
Where a coal lease provides that the lessees shall not be required to pay the minimum rental or mine the coal when the coal in the land is less than two feet six inches in general thickness, the burden is on the lessees in an action against them for the minimum rental to satisfy the jury by the weight of the evidence that the coal was less than two feet six inches in general thickness; and if the evidence as to the thickness is conflicting, and the weight of the evidence tends to show that the lessees had not made proper examinations, explorations, or openings to test the actual thickness of the vein, a verdict and judgment for the lessors will be sustained.

Argued April 21, 1909. Appeals, Nos. 298 and 299, Jan. T., 1908, by defendants, from judgment of C. P. Clearfield Co., Sept. T., 1907, Nos. 244 and 245, on verdict for plaintiffs in cases of Mary Holt et al. v. M. D. Kelley et al. and Fannie Loraine et al. v. M. D. Kelley et al. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Assumpsit to recover rentals alleged to be due under a coal lease.

REED, P. J., specially presiding, charged as follows:

By consent of the parties you have been sworn in these two cases which are being tried together before you, but you will bear in mind that you are required to render separate verdicts, that is, a verdict in each case in accordance with the law and the evidence applicable to that case.

The plaintiffs in these cases leased their respective lands to the defendants, to operate and remove therefrom the merchantable and workable coal. The leases are substantially identical in their language and covenants, with this exception. In the Holt lease the royalty is fixed at seven cents per ton of 2,240 pounds and 15,000 tons of coal as the minimum quantity of coal to be mined each year. In the Loraine lease the royalty is fixed at seven and one-half cents per ton of 2,240 pounds and

10,000 tons of coal as the minimum quantity of coal to be mined each year. The plaintiffs have brought these actions on their respective leases to recover the minimum royalty to which they are respectively entitled thereunder. The leases are dated October 15, 1903, and the covenant in each lease is that the minimum royalty for which payment is to be made shall begin three months thereafter, or on January 15, 1904. It is also provided that this minimum royalty shall be paid for on or before December 31, each year. The actions on these leases were begun July 6, 1907, and therefore the claim in each case is for the minimum royalty accruing during the years 1904, 1905 and 1906, with interest. It is not contended or alleged by the defendants, that they have paid any royalty under the Holt lease, and therefore the plaintiffs in that case claim to recover the full amount of the minimum royalty for the three years mentioned, with interest, namely, $1,006.25 royalty on coal which should have been mined in the year 1904, with interest thereon from December 31, 1904, and $1,050 royalty on coal which should have been mined in the year 1905, with interest thereon from December 31, 1905, and $1,050 royalty on coal which should have been mined in the year 1906, with interest thereon from December 31, 1906. In the Loraine lease, with the exception of $88.16, no royalty has been paid on coal mined under that lease, and therefore the plaintiffs in that case claim to recover the full amount of the minimum royalty for the three years mentioned, with interest, namely, $718.75 for royalty on coal which should have been mined in the year 1904, less $88.16 paid on account thereof, leaving $630.59 due for that year, with interest thereon from December 31, 1904, and $750 royalty on coal which should have been mined in the year 1905, with interest thereon from December 31, 1905, and $750 royalty on coal which should have been mined in the year 1906, with interest thereon from December 31, 1906. You will recall that in the Holt lease it is provided that the minimum tonnage to be mined each year is 15,000 tons at seven cents per ton, and in the Loraine lease the minimum number of tons to be mined each year is 10,000 tons and the royalty is seven and one-half cents per ton.

The defense to these actions is identically the same in each case and is based on the following provision, contained in each lease, namely: "It is further agreed that the coal to be mined under the provisions of this agreement shall be merchantable and workable coal and it shall be optional with the said lessees, that is the defendants, whether to work and mine any coal the vein of which is less than two feet six inches in general thickness, except in cases of local faults or where rolls occur so as to reduce the size of the vein below the general thickness, and in that event the coal in such fault or roll, when it is merchantable coal, shall be mined across and through such fault or rolls." It is further provided that in such event, that is, the thinning of the coal, the lessees expressly agree to drive sufficient rooms and headings through such rolls, fault or thin places so as to determine whether or not such thinning of the coal or fault is continuous and to develop, if possible, the coal beyond. There is also a provision in these leases, that the defendants are to mine and carry away all the coal in the leased lands that is merchantable and practically minable. Also that they are to proceed at once to open and develop the coal in said lands where not already opened and to continue their mining operations thereon until the termination of the leases, which were to continue for a period of fifteen years or until the merchantable coal in said lands was exhausted. Also, that they would work the mines in a careful and judicious manner and after the methods of mining in general use, so as to prevent unnecessary waste of coal and so as to produce from the seams or veins all the coal that could be produced with safety. They were to commence operations or the work of developing the lands within thirty days after the execution of the leases and to pursue the work industriously, diligently and continuously after that date, and to produce coal as rapidly as the conditions would permit. As already indicated, unless the merchantable and workable coal in the lands became exhausted or the coal became less than two feet six inches in general thickness, they were to mine on the Holt lease not less than 15,000 tons of coal annually or pay for that quantity at the rate of seven cents per ton whether mined or not, and on

the Loraine lease they were to mine not less than 10,000 tons of coal annually or pay for that quantity at the rate of seven and one-half cents per ton whether mined or not.

Now, gentlemen, you will observe the plaintiffs' right to recover in these actions depends on two things. First, that the lands covered by their respective leases contain a sufficient quantity of merchantable and workable coal to produce in each of the years claimed for not less than 15,000 and 10,000 tons, respectively; and, second, that the coal was in general over two feet six inches in thickness. . . . [If there was coal in the lands covered by these respective leases of the general thickness of two feet six inches, but not in sufficient quantities to produce minimum tonnage to be mined each year of the three years named, then the plaintiffs would be entitled to recover, respectively, proportionately, such sums as the quantity of coal that could have been mined would bear to the minimum quantity required to be mined under the leases. By this I mean, that if the evidence warranted a finding that there was sufficient merchantable and workable coal in the lands, which was of a general thickness of two feet six inches, to produce at least a portion of the minimum quantity which the defendants were required to mine each year, the plaintiffs would be entitled to a verdict for the royalty on whatever quantity could have been mined during the years 1904, 1905 and 1906, at the rates fixed in their respective leases.] [1]

The defendants' contention is, that the coal in these lands was less than two feet six inches in general thickness and therefore that they were relieved from mining the same under the express stipulation of the leases, to which I have called your attention, and consequently are not required to pay the minimum royalty provided for in said leases. The plaintiffs deny this, and also allege that the defendants have not made any adequate effort to determine the quantity of merchantable and workable coal of at least two feet six inches of general thickness contained in said lands, and thus is presented the issue or important questions which you are to determine.

The burden is on the defendants to satisfy you by the weight of the evidence that the minimum quantity of coal, of the

quality and kind provided for in the leases, could not be found and did not exist in the lands. The defendants admit that they did not do any mining under the Loraine lease, except that in operating an adjoining tract they got over the line and took out all the coal in the top or "D" vein on the McClellan tract, which is the tract covered by the Loraine lease. They made no other openings or explorations under this lease, except to measure the thickness of the coal in the lower vein at the face of the headings and perhaps at other places of an old development or working of the coal thereunder before the execution of the lease in question, and also the putting down of a bore hole some distance ahead of the face of the old development. They called witnesses to show that the old development or mining on this tract indicated a thinning of the coal as the development advanced and that the bore hole put down by them tended to conclusively establish this fact; also that the coal had so thinned down in the operation that had been carried on before they leased the land that it was less than two feet six inches in thickness at all places reached by the old development; that this thinning of the coal was not due to any fault, roll or other trouble in the mine, but was a gradual thinning as the development advanced in the hill and the thickness of the cover over the coal increased, and their contention is that the testimony offered by them establishes the fact that the coal remaining in the land and covered by this lease is less than two feet six inches in general thickness. If you are satisfied of this fact, by the weight of the testimony in the case, then the plaintiffs cannot recover and your verdict will be in favor of the defendants.

The plaintiffs, however, contend that the defendants have not made any adequate or sufficient explorations of the lands covered by the Loraine lease to determine what the thickness of the coal underlying the same is; also that they have not complied with the terms of the leases in exploring the same, which requires that they shall proceed to open and develop the coal on said premises where not already opened, which they have neglected to do; also, that only a very small part of the tract had been operated before the same was leased to the

defendants, and that the measuring of the coal exposed in the old openings or operations and the putting down of one bore hole would not be a fair test of the thickness of the coal in that very large part of the tract which remained untouched and undeveloped, and they have offered testimony tending to prove that the coal vein in this land was rolly and that there were dips and clay veins in it, and that the coal thinned and thickened by reason of these clay veins and dips; and also tending to prove there was coal exceeding two feet six inches in thickness underlying said land and which the defendants were required to mine under their lease of the same.

It is not necessary that I should recite the testimony offered on either the part of the defendants or plaintiffs bearing on this question. You will recall yourselves and from it determine whether or not the defendants have made such developments or explorations and investigations under the Loraine lease as warranted the conclusion that the coal underlying the premises therein described is less than two feet six inches in general thickness. If you are satisfied that they have and that the coal remaining in the land is less than two feet six inches in general thickness, then you will return a verdict in their favor in that case. Otherwise, you will return a verdict for the plaintiffs in such sum as you may find that they are entitled to under the terms of the lease.

In the Holt case the defendants also explored the old workings. The lease in that case covers about 132 acres of land and my recollection is that some witness testified that about 100 acres of it had been mined out at the date of the execution of the lease to the defendants. The defendants did not make any new openings on this tract, nor did they drive in the main headings of the old, except as hereinafter explained. They drained the old mines and did some mining in driving a cross heading or entrance for a distance of about sixty yards and they took out 1,152 tons of coal. They also put down three bore holes several hundred feet in advance of the face of the workings. They contend and have offered testimony to show, that in the old workings there was a gradual thinning of the coal as the work advanced and that the bore holes put down

by them establishes a continuation of the thinning of the coal; that it was less than two feet six inches in thickness at the face of all the old workings and that the bore holes show that it was still less 500 or 600 feet in advance of the old workings than it was at the face of the same, and they therefore ask you to find as a fact that the coal remaining in the land covered by the Holt lease is less than two feet six inches in general thickness, and if you so find your verdict will be in their favor. The plaintiffs, however, have offered testimony to show that the defendants have not complied with the terms of their lease in this case; that they have not put in any new openings nor have they driven in the headings of the old openings to determine whether or not the thinning of the coal is due to some fault or roll in the coal or whether it is the general condition of the same, and generally that they have not made such investigations and explorations as to justify the conclusion that the coal remaining in these premises is less than two feet six inches in general thickness. They have also offered testimony to show that the coal remaining in the land is of greater thickness than two feet six inches and that the thickness is also affected by clay veins and dips, and that defendants have not made good their contention that it is in general of a thickness less than two feet six inches. I may repeat what I said about the Loraine lease, that it is not necessary for me to recite the testimony offered by the defendants and plaintiffs bearing on the thickness of the coal. If the defendants have satisfied you by the weight of the testimony that they have made such investigations and explorations of the premises as to warrant the conclusion that the coal remaining therein is less than two feet six inches in general thickness, and you find this to be a fact, then you will return a verdict in their favor. Otherwise, you will find for the plaintiffs in the case such sum as they are entitled to under the terms of this lease.

[It appears from the undisputed testimony that both the Holt and Loraine tracts contain at least one vein of merchantable and workable coal, the dispute being as to the general thickness of the coal in the vein. The plaintiffs, however, offered some testimony to show the probable existence of an-

other vein of merchantable and workable coal of greater thickness than two feet six inches, below the admitted vein which has been opened and operated on these lands.] [2] The leases to the defendants cover all veins or seams of coal in the leased premises, but before the defendants could be required to expend money in exploring the property for this lower vein, or before you can consider that vein in fixing them with the minimum royalty provided under said leases, you must not only be satisfied for its existence in these lands, but also that it is reasonable and practicable to work the same. That by the exercise of ordinary care and diligence in the exploration and development of the lands for coal such veins would have been discovered by the defendants, and that an ordinarily careful and prudent operator would have worked the same and taken the coal therefrom.

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them.

*John G. Love,* with him *James A. B. Miller, Singleton Bell* and *Howard B. Hartswick,* for appellants.

*Thomas H. Murray, James P. O'Laughlin* and *Hazard Alex. Murray,* for appellees.

PER CURIAM, May 10, 1909:
These appeals involve the same questions and were argued together. The facts that gave rise to them, the contentions of the parties, and the grounds on which they were submitted to the jury are clearly set out in the charge of Judge REED, specially presiding. We find no error of which the appellants can justly complain, and the judgments are affirmed.